UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10053-RCL

UNITED STATES OF AMERICA

v.

VICTOR ARROYO

**MEMORANDUM AND ORDER ON
GOVERNMENT'S MOTION FOR DETENTION**

March 26, 2004

DEIN, M.J.

### I. GOVERNMENT'S MOTION FOR DETENTION

The defendant, Victor Arroyo, is charged in a multi-count indictment with conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846; four counts of distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; conspiracy to distribute heroin in violation of 21 U.S.C. § 846; and five counts of distribution of heroin and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  An initial appearance was held on February 24, 2004, at which time the government moved for detention on the grounds that the defendant was a danger to the community (18 U.S.C. § 3142(f)(1)(C)), that there was a serious risk of obstruction of justice (18 U.S.C. § 3142(f)(2)(B)), and that the defendant posed a serious risk of flight (18 U.S.C. § 3142(f)(2)(A)).  A detention hearing was held on February 27, 2004 at which time

the defendant, through counsel, requested a continuance until March 9, 2004. A detention hearing was held on March 9, 2004, at which time the defendant was represented by counsel. The government presented the testimony of Special Agent Mark Karangekis of the FBI. The hearing was continued on March 25, 2004, at which time the defendant was represented by counsel. For the reasons detailed herein, this court orders that the defendant be detained prior to trial.

## II.  THE BAIL REFORM ACT

A.  Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained. See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

B.  The government is entitled to move for detention on grounds of danger to the community in a case that –

      (1)    involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);

      (2)    involves an offense punishable by death or life imprisonment;

      (3)    involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[1] or more; or

      (4)    involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. § 3142(f).

      C.    In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

---

[1] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 333, 336-37 (1st Cir. 1989).

      (a)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

      (b)    the weight of the evidence against the accused;

      (c)    the history and characteristics of the person, including --

      (i) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (ii) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

      (d)    the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

    D.    Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

    First, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a federal crime of violence within the meaning of § 3156(a)(4) [or a state crime of violence within the meaning of § 3156(a)(4) if the offense would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act -- e.g.,

possession of cocaine, heroin, or more than 1000 pounds of marijuana, with intent to distribute, the Controlled Substances Import and Export Act, <u>or</u> any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.  <u>See</u> 18 U.S.C. § 3142(e).

<u>Second</u>, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under the provisions of 18 U.S.C. § 924(c) – i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.  <u>See</u> 18 U.S.C. § 3142(e).

Insofar as the latter "presumption" is applicable in assessing "risk of flight," the burden remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight.  The burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are

not applicable to him for whatever reason advanced.  <u>United States v. Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1991).  This "only imposes a burden of production on a defendant.  The burden of persuasion remains with the government." <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17-18 (1st Cir. 1987) (per curiam); <u>see</u> also <u>United States v. Perez-Franco</u>, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however, the presumption does not disappear.  Rather, it retains some evidentiary weight, the amount of which will depend on how closely the defendant's case "resembles the congressional paradigm" and other relevant factors.  <u>Palmer-Contreras</u>, 835 F.2d at 17-18; <u>Dillon</u>, 938 F.2d at 1416.  See <u>United States v. Jessup</u>, 757 F.2d 378, 387 (1st Cir. 1985).

### III.  **DISCUSSION OF WHETHER DETENTION IS WARRANTED**

"Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." <u>U.S. v. Tortora</u>, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited.  Based on the record before me, I find that there are no conditions which may be imposed which will reasonably insure the safety of the community or the appearance of the defendant at trial.

The indictment establishes that there is probable cause to believe that the defendant committed the crime charged.  Since the defendant is charged with a violation of the Controlled Substances Act (21 U.S.C. § 801 et seq.), which carries a maximum sentence of ten years or more imprisonment, the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community applies.  I assume, without

deciding, that the defendant has met his burden of production in response to the presumption.  Nevertheless, I find that the government has proven by clear and convincing evidence that there are no conditions or combination of conditions which will reasonably assure the safety of other persons and the community.  I also find that the government has proven by a preponderance of the evidence that no condition or combination of conditions will assure the defendant's appearance as required

### A.  The Offense Charged And Weight Of The Evidence

The defendant is charged with a serious drug offense, and faces a maximum term of life imprisonment, with a ten year mandatory minimum term of imprisonment if convicted of the crime charged.  The evidence against him appears strong.

Arroyo was arrested as part of a multi-agency investigation of a street gang known as the Latin Kings, which is operating in Lawrence and Lowell, Massachusetts, as well as other areas across the country.  He has been identified as the Lawrence Local Crown leader, and goes by the name "King Vicious."  Ex. 1 at ¶ 19.  As part of the investigation, there were a number of controlled buys of heroin, cocaine and cocaine base.  Arroyo made 14 sales of crack cocaine and heroin to cooperating witnesses and, on one occasion, to an undercover officer.  Id. at ¶ 39; Exs. 6 & 8.  There are audio and/or video recordings of various of the transactions, as well as surveillance reports.   During at least one transaction during February 2003, Arroyo indicated that he would be in a position to sell an undercover agent a firearm, although that transaction was never consummated.  See Ex. 6 at 2/11/03 Report.

The Latin Kings apparently have an organized internal judicial system and impose punishment on members who do not comply with the organization's rules and regulations. See, e.g., Ex. 1 at ¶¶ 16-17. The evidence before the court is that Latin King members who cooperate with law enforcement may face very serious punishment, including execution. Id. at ¶ 16. The use of violence is allegedly rampant and condoned by the Latin Kings. Id. at ¶ 20. For example, the defendant Arroyo allegedly (unknowingly) contacted a cooperating witness and instructed him to participate in a "Mission" against rival Dominican drug dealers who had assaulted a Latin King member. Id. Arroyo is allegedly the "Minister of Defense" for the local chapter of the Latin Kings, and is reported to be responsible for arranging for "hit squads" of Latin King members to conduct gang "Missions." Id. at ¶ 38.

### B.  History And Characteristics Of The Defendant

The defendant, age 26, was born on March 29, 1977 in Puerto Rico. He was raised and educated in Hartford, Connecticut. He last attended Middle School. Arroyo is single. He has an 8 month old daughter with his current girlfriend, and a 7 year old daughter who lives in Lawrence, Massachusetts, with her mother, Maria Lebron. Ms. Lebron took out a restraining order against the defendant in 2002, which recently expired.

The defendant has been living in Massachusetts since 1995, and has been at his current address for approximately 2 years. Prior to living in Massachusetts, he lived in Hartford with his mother, who still resides in that city. His father is deceased. The U.S. Probation Office in Connecticut indicated that the defendant's mother lives in an area

known to be "a place of migration for members of the All Mighty Latin King Nation Gang." (See Pre-trial Services report).

Arroyo has a very limited and sporadic employment history. He last maintained employment over one year ago.

The defendant has prior convictions for drug and other offenses. Thus, in 1997, he was charged with and later convicted of knowingly receiving stolen property and possession of a Class B controlled substance, for which he was given probation. When the transactions at issue in this case occurred, the defendant was on pre-trial release from the state court on charges of possession of a Class D controlled substance (later dismissed) and charges of attaching wrong motor vehicle plates, counterfeiting motor vehicle documents and compulsory insurance violation, for which he was later found guilty. A two year restraining order was obtained against the defendant in 2002 by the mother of his child. The restraining order recently expired.

### C. Danger To The Community

The government has met its burden of proof, by clear and convincing evidence, that there are no conditions or combination of conditions of release which will reasonably assure the safety of other persons and the community. Despite his prior arrests for drug offenses, the defendant continued to sell cocaine and heroin, even while on pre-trial release from the state court. The sales at issue involve more that 50 grams of crack cocaine and more than 100 grams of heroin. There is evidence in the record that the defendant has access to weapons.

The defendant is unemployed, and does not seem to have any legitimate source of income. Thus, it seems likely that the defendant will continue to engage in illicit activities to support himself and his family. The rebuttable presumption which applies in the case of drug charges was premised, in part, on Congress' conclusion "that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S. Rep. No. 225, 98th Cong., 1st Sess. 13 (1983). Recognizing that the burden of persuasion remains with the government at all times, I find that the presumption of dangerousness has not been rebutted.

The defendant proposes that he be released to the custody of his mother in Hartford, where his girlfriend and young daughter are presently residing. However, as noted above, Hartford also appears to have a branch of the Latin Kings, and there is no indication that such a move will keep the defendant away from drugs, as he suggests. Moreover, there is no evidence to indicate that Arroyo's mother is able to exert sufficient influence to control the defendant's behavior.

### D.  Risk Of Flight

It is not necessary for the court's detention decision to reach the issue whether the record evidence before this court warrants a conclusion that no condition or combination of conditions -- short of pretrial detention -- would reasonably assure the appearance of the defendant. I do note, however, that the defendant faces a lengthy period of incarceration, and that his record contains a number of defaults. In addition, the defendant has ties to Puerto Rico as well as relatives in Connecticut. Under such circumstances, the risk of flight is high, although there is no evidence to warrant the conclusion that the defendant

would flee the country.  I conclude that the government has met its burden of proving that the defendant poses a serious risk of flight and that there are no conditions which would reasonably assure the defendant's appearance as required.

## IV.  ORDER OF DETENTION

IT IS ACCORDINGLY ORDERED that the defendant remain DETAINED pending trial, and it is further Ordered --

(1)     That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)     That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3)     On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

      / s / Judith Gail Dein  
      Judith Gail Dein  
      United States Magistrate Judge